## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JASMINE BRETTO and NAOMI KOPINSKY, individually and on behalf of those similarly situated,**<br><br>**Plaintiffs**,<br><br>v.<br><br>**AMC ENTERTAINMENT HOLDINGS, INC.,**<br><br>**Defendant**. | **Case No. 23-2317-DDC-ADM** |

## MEMORANDUM AND ORDER

Plaintiffs Jasmine Bretto and Naomi Kopinsky, individually and on behalf of those similarly situated, brought this proposed class action lawsuit against defendant AMC Entertainment Holdings, Inc. Plaintiffs allege that defendant violated the Video Protection Privacy Act (VPPA), 18 U.S.C. § 2710, by sharing statutorily protected information with Facebook after plaintiffs purchased movie tickets from defendant's website. Before the court is defendant's Renewed Motion to Dismiss (Doc. 37). In a nutshell, defendant argues that it doesn't qualify as a "video tape service provider" under the VPPA. Thus, defendant contends, plaintiffs have no cause of action. The court agrees. This Order grants defendant's Renewed Motion to Dismiss (Doc. 37) and directs the Clerk to close this case.

### I.      Background

AMC is one of the largest movie theater operators in the world. Doc. 1 at 1 (Compl. ¶ 2). Plaintiffs allege that they purchased movie tickets from AMC's website. *Id.* at 11, 12 (Compl. ¶¶ 50, 59). And AMC then shared information about those transactions with Facebook. *Id.* at

11–12 (Compl. ¶¶ 49–56, 58–65).  Plaintiffs argue this information sharing violated the VPPA.
*Id.* at 15 (Compl. ¶¶ 76–82).  They seek class certification and legal and equitable relief in this
federal-question action.  *Id.* at 15–16 (Compl. ¶ 83, Prayer for Relief).

## II.       Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state
a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive
a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.
at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more
than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S.
at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir.
2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible
that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual
allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion
couched as a factual allegation[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands
more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.*
(quoting *Twombly*, 550 U.S. at 555).

III.        Analysis

"The original impetus for the VPPA arose during President Ronald Reagan's contested nomination of Judge Robert Bork to the Supreme Court, when the *Washington City Paper* published a profile of Judge Bork based on a leaked list of 146 films that he and his family had rented from a local video store." *Osheske v. Silver Cinemas Acquisition Co. (Osheske II)*, 132 F.4th 1110, 1112 (9th Cir. 2025). "Senators quickly decried the publication." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024). The *Washington City Paper* publication became "the catalyst for the VPPA." *Id.* The act "prohibits a 'video tape service provider' from 'knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider,' subject to certain enumerated exceptions, such as in cases where the provider has obtained a consumer's 'informed, written consent.'" *Id.* (alteration in original) (quoting 18 U.S.C. § 2710(b)).

The dispute here hinges on whether defendant is a "video tape service provider" within the meaning of the VPPA. 18 U.S.C. § 2710(a)(4). If defendant isn't a video tape service provider, plaintiffs have no cause of action and their claim isn't viable.

In pertinent part, the VPPA defines "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" *Id.* Plaintiffs never argue that defendant—a movie theater operator—rents or sells. *See generally* Doc. 40. Plaintiffs thus place all their eggs in the "delivery" basket. They contend that defendant's "business is to deliver movies to consumers[.]" *Id.* at 10. The court disagrees. A movie theater operator isn't "engaged in the business" of "delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The overwhelming weight of authority, the plain meaning of the statute, and canons of statutory construction all compel this conclusion. Take those points successively.

### A.     Weight of Authority

Start with the overwhelming weight of authority.  So far, every federal court to consider the inquiry—six district courts and the 9th Circuit—agrees.  A movie theater who shows movies doesn't "deliver" movies within the meaning of the VPPA.  *Osheske II*, 132 F.4th at 1112–14; *Osheske v. Silver Cinemas Acquisition Co. (Osheske I)*, 700 F. Supp. 3d 921, 927–28 (C.D. Cal. 2023), *aff'd*, 132 F.4th 1110 (9th Cir. 2025); *Walsh v. Cal. Cinema Invs. LLC*, 23-cv-09608-ODW (AJRx), 2024 WL 3593569, at *2–6 (C.D. Cal. July 29, 2024); *Christopherson v. Cinema Ent. Corp.*, No. 23-CV-3614 (NEB/LIB), 2024 WL 4492021, at *2–6 (D. Minn. Sept. 17, 2024), *appeal docketed*, No. 24-3042 (8th Cir. Oct. 7, 2024); *Hoge v. VSS-S. Theaters LLC*, No. 23-cv-346, 2024 WL 4547208, at *2 (M.D.N.C. Sept. 10, 2024), *appeal dismissed per stipulation*, 2024 WL 5509495 (4th Cir. Dec. 4, 2024); *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 603–04 (S.D.N.Y. 2025); *Garza v. Alamo Intermediate II Holdings, LLC*, No. 23-cv-05849-VC, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024), *appeal docketed*, No. 24-2165 (9th Cir. Apr 8, 2024).

Plaintiffs try to mute this unanimous chorus.  According to plaintiffs, those courts "failed to follow the rules of statutory interpretation of unambiguous text[.]"  Doc. 40 at 7.  But the absence of a single court construing the VPPA in the manner plaintiffs advocate is telling.

Plus, it's not just a numbers game.  This court's independent construction of the VPPA leads to the same conclusion.  The court explains, next.

### B.     Plain Meaning

The plain meaning of "delivery" requires dismissal of this action.  "Delivery" means the "formal act of voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular person or place."  *Delivery*, Black's Law Dictionary (12th ed. 2024); *accord Berryman*, 763 F. Supp. 3d at 603.  "[M]ovie theaters do not 'bring' movies to any person or

place—people go to the movies, not the other way around." *Garza*, 2024 WL 1171737, at *1. Nor do movie theaters "transfer" movies to their patrons. In short, "[m]ovie theaters do not rent movies, sell movies, or deliver movies; they 'show' movies." *Osheske I*, 700 F. Supp. 3d at 925; *Hoge*, 2024 WL 4547208, at *2 (same).

Plaintiffs' arguments on this point aren't compelling. Plaintiffs assert that "[m]ultiple definitions of 'deliver' describe what theaters do with movies[.]" Doc. 40 at 11. Plaintiffs then offer these definitions of "deliver":

- "to send (something aimed or guided) to an intended target or destination"

- "to provide something that is promised or expected."

*Id.* (quotation cleaned up). Even using plaintiffs' preferred definitions, saying that movie theaters "deliver" movies tries to jam a square peg into a round hole.

Take plaintiffs' first definition. Movie theaters don't "send" movies to the audience. They show movies. *Osheske I*, 700 F. Supp. 3d at 925. And the audience comes to them. So, it's difficult to conceive that Congress intended to describe the *showing* of movies when it used the pertinent statutory language—"delivery of . . . audio visual materials[.]" 18 U.S.C. § 2710(a)(4); *see Garza*, 2024 WL 1171737, at *1 ("[I]t would be quite a stretch to say that movie theaters 'send' movies by projecting them onto a screen.").

Plaintiffs' second definition fares no better. Oxford English Dictionary, the source plaintiffs cite, Doc. 40 at 11 n.5, offers the definition when "deliver" is used without a direct object. *Deliver*, Oxford English Dictionary, https://www.oed.com/dictionary/deliver_v1?tab=meaning_and_use#7263469 (last visited July 14, 2025) (definition II.12.b) (identifying definition as "intransitive"); *Croftcheck v. Accts. Recovery Bureau, Inc.*, No. 11-CV-1220, 2012 WL 1378683, at *4 (M.D. Pa. Apr. 20, 2012)

("Transitive verbs take nouns as direct objections[.]").  The VPPA, however, attaches an object—"prerecorded video cassette tapes or similar audio visual materials"—to its use of "delivery[.]" 18 U.S.C. 2710(a)(4); *Garza*, 2024 WL 1171737, at *1 ("[T]he statute refers to the delivery of a specific kind of good ('audiovisual materials'), not the delivery of a result or outcome.").  So plaintiffs' second definition isn't compelling either.  *See Walsh*, 2024 WL 3593569, at *3 (explaining that the VPPA "refers to the delivery of 'audio visual materials,' rather than a generalized 'expected result'"); *see also Garza*, 2024 WL 1171737, at *1 (explaining that a similar definition "is not what 'delivery' usually means" and "surely not what 'delivery' means in this context").

In short, "to say a movie theater 'delivers' movies is to stretch the natural meaning of the verb beyond recognition." *Osheske I*, 700 F. Supp. 3d at 925.  And the court's task is to distill the "ordinary, everyday" meaning of the term.  *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (quotation cleaned up).  Assigning "delivery" its ordinary, plain meaning, the court concludes that movie theater operators aren't engaged in the business of the "delivery of prerecorded video cassette tapes or similar audio visual materials[.]"  18 U.S.C. 2710(a)(4); *see also Hoge*, 2024 WL 4547208, at *2 (finding no ambiguity in the VPPA and concluding that movie theater operator didn't qualify as "video tape service provider").  Movie theater operators thus aren't video tape service providers, within the meaning of the VPPA.  And plaintiffs' claim isn't viable.

Even if any doubt remained about the plain meaning of "delivery," the structure of the statute compels the same result.

### C.    Canons of Statutory Construction

The VPPA's structure reinforces the court's plain-language interpretation.  Consider the statutory canon *noscitur a sociis*.  "This canon, which instructs, that 'a word is known by the

6

company it keeps,' helps [courts] 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *In re McDaniel*, 973 F.3d 1083, 1097 (10th Cir. 2020) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Courts apply this doctrine "by giving words grouped in a list a related meaning." *Id.* (quotation cleaned up). "The common quality in a list that is the focus of the *noscitur a sociis* inquiry should be its most general quality—the least common denominator, so to speak—relevant to the context." *In re Crocker*, 941 F.3d 206, 219 (10th Cir. 2019) (internal quotation marks and citation omitted).

Applying *noscitur a sociis* here, the "meaning of each word in 'rental, sale, or delivery' is cabined by the fact that the sequence enumerates different transactions 'of prerecorded video cassette tapes or similar audio visual materials.'" *Osheske II*, 132 F.4th at 1113 (quoting 18 U.S.C. § 2710). All three acts—"renting, selling, and delivering—describe a *transfer* of some possessory interest in the audio visual materials." *Osheske I*, 700 F. Supp. 3d at 925 (emphasis in original); *see also* Doc. 37 at 12 (arguing that "delivery" in the VPPA requires a transfer of possessory interest). The court thus "read[s] 'delivery,' consistent with 'rental' and 'sale,' to signify the transfer or conveyance of a good[.]" *Osheske II*, 132 F.4th at 1113; *see also Christopherson*, 2024 WL 4492021, at *2 ("[T]he Court concludes that the terms 'sale' and 'delivery' in the VPPA require a transfer of some possessory interest in the audio visual materials being sold or delivered."). But movie theaters don't transfer any possessory interest in the movies they show. They neither sell movies, nor rent them, nor deliver them.

Hoping to avoid this result, plaintiffs point to a "well-accepted application" of the VPPA—streaming services. Doc. 40 at 13–14 (citing *In re Hulu Priv. Litig.*, No. C 11-03764, 2012 WL 3282960, at *4 (N.D. Cal. Aug. 10, 2012)). According to plaintiffs, the transfer-of-

possessory-interest definition of "delivery" is incompatible with applying the VPPA to streaming services. *Id.* The court isn't persuaded. As an initial matter, no binding court has held that video streaming platforms are "video tape service providers" under the VPPA. And whether the VPPA applies to streaming services simply isn't a question before the court here. *See Osheske II*, 132 F.4th at 1113 n.3 (explaining that Ninth Circuit decisions "have left open the possibility that the temporary or permanent exchange of digital 'audio visual materials' might be subject to the VPPA" but declining to decide the issue on movie theater's motion to dismiss). Regardless, the court agrees with other courts that have held that streaming services differ from movie theaters because streaming services do transfer a possessory interest in audio visual content. *See Osheske I*, 700 F. Supp. 3d at 926 n.3 ("[E]ven with the delivery through streaming, the consumer is given a possessory interest that allows them to view the videos in their homes or at the place of their choosing."); *Christopherson*, 2024 WL 4492021, at *3 (explaining that definition of "delivery" that excludes movie theater operators "aligns with 'delivering' video cassette tapes or similar audio visual materials to a location of the consumer's choosing" (quotation cleaned up)).

Plaintiffs next point to several extra-Congressional sources that refer to movie theaters delivering movies to patrons. Doc. 40 at 6, 11–12. Plaintiffs argue that the failure to recognize these sources explains why every court to consider the inquiry so far has gotten it wrong. *Id.* at 11–12. The problem with this argument is that these sources say nothing about how Congress used the word "delivery" in the specific context of the VPPA. And in statutory construction, context is everything. *See, e.g.*, *In re Woods*, 743 F.3d 689, 694 (10th Cir. 2014) ("We begin our analysis by examining the subsection's structure, as the meaning of statutory language, plain or not, depends on context." (quotation cleaned up)); *United States v. Burkholder*, 816 F.3d 607,

615 n.6 (10th Cir. 2016) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation cleaned up)); *United States v. Hansen*, 599 U.S. 762, 775 (2023) ("When words have several plausible definitions, context differentiates among them.").  In light of this principle, plaintiffs' abstract examples of how texts—none originating from Congress—use the term "delivery" do little to move the needle.[1]

Because the court concludes that defendant doesn't deliver movies to its patrons and thus isn't a video tape service provider, it needn't consider defendant's alternative arguments that the movies it shows aren't "prerecorded video cassette tapes or similar audio visual materials" and that plaintiffs failed to allege defendant disclosed any personal identifying information.  *See* Doc. 37 at 13–15, 19–20.

## IV.    Conclusion

The court joins the growing chorus of courts to reject plaintiffs' theory that movie theaters are video tape service providers under the VPPA.  The weight of authority, plain language of the VPPA, and statutory structure all support this conclusion.  The court thus grants defendant's Renewed Motion to Dismiss (Doc. 37) and directs the Clerk to close this case.[2]

---

[1]    As plaintiffs acknowledge, the court needn't look to legislative history where the meaning of the statute is clear.  Doc. 40 at 16.  In fact, our Circuit has instructed that it's "both unnecessary and improper to resort to legislative history to divine congressional intent" when "the meaning of the statute is clear[.]" *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1157 n.10 (10th Cir. 2014) (quotation cleaned up); *see also Iliev v. Holder*, 613 F.3d 1019, 1024 (10th Cir. 2010) ("We do not resort to legislative history to cloud a statutory text that is clear." (quotation cleaned up)).  In light of the VPPA's clear text, the court declines to consult the act's legislative history.

[2]    Plaintiffs' Response brief requests leave to amend if the court dismisses their claims.  Doc. 40 at 20.  The court denies this passing request.  Our Circuit has explained that a "district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'"  *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quotation cleaned up) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)).  That's so because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant AMC

Entertainment Holdings, Inc.'s Renewed Motion to Dismiss (Doc. 37) is granted.

**IT IS SO ORDERED.**

**Dated this 29th day of July 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

grounds upon which such a request would be based." *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014). Consistent with this guidance from the Circuit, our court routinely denies such passing requests for leave to amend. *E.g.*, *Cortishae-Eier v. Ford Motor Co.*, No. 23-3081-EFM-TJJ, 2023 WL 5625311, at *5 (D. Kan. Aug. 31, 2023); *Eravi v. City of Lawrence*, No. 23-CV-4109-JAR-GEB, 2024 WL 3360447, at *5–6 (D. Kan. July 9, 2024); *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, No. 19-cv-4007-HLT-TJJ, 2021 WL 1238254, at *6 (D. Kan. Apr. 2, 2021); *Vestring v. Halla*, 920 F. Supp. 2d 1189, 1193 (D. Kan. 2013). Plus, any amendment is likely futile. *See Osheske II*, 132 F.4th at 1114 (explaining—in the context of a VPPA claim against a movie theater operator—that the "district court's dismissal without leave to amend was proper because it is clear . . . that the complaint could not be saved by any amendment" (quotation cleaned up)).